IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Violet T. Mazyck,                )<br>                                               )<br>               Plaintiff,          )<br>                                               )<br>vs.                                         )<br>                                               )<br>Jo Anne B. Barnhart,           )<br>Commissioner of Social Security,  )<br>                                               )<br>               Defendant.      )<br>                                               ) | Civil Action No. 6:05-3319-GRA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on July 15, 2003 (protective filing date June 3, 2003), alleging that she became unable to work on August 15, 2002. The applications were

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

denied initially and on reconsideration by the Social Security Administration. On May 4, 2004, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff and her attorney appeared, considered the case *de novo*, and on July 12, 2005, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on October 19, 2005. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)  The claimant met the disability insured status requirements of the Act on August 15, 2002, the date the claimant stated she became unable to work, and continues to meet them through September 30, 2008.
>
> (2)  The claimant has not engaged in substantial activity since August 15, 2002.
>
> (3)  The medical evidence establishes that the claimant has severe impairments of degenerative joint disease of the left knee and obesity; but that she does not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> (4)  The claimant's allegations of her complete inability to work are not fully credible and are not supported by the other evidence in the record.
>
> (5)  The claimant has the residual functional capacity for sitting six hours a day, standing and walking two hours a day, frequently lifting and carrying five pounds with a heaviest weight lifted of ten pounds, occasionally bending at the waist, and no climbing, kneeling or stooping (20 CFR 404.1545 and 416.945).
>
> (6)  The claimant is unable to perform her past relevant work as a school bus driver.
>
> (7)  The claimant is 46 years old, which is defined as a younger person (20 CFR 404.1563 and 416.963).

 (8) The claimant has a high school education (20 CFR 404.1564 and 416.964).

 (9) The claimant does not have any acquired work skills, which are transferable to the skilled or semiskilled work functions of other work (20 CFR 404.1568 and 416.968).

 (10) Based on an exertional capacity for a full range of sedentary work and the claimant's age, education, and work experience, Section 404.1569 of Regulations No. 4 and Section 416.969 of Regulations No. 16 and Medical Vocational Rule 201.21, Table No. 1, of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

 (11) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which

3

equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The record reveals that the plaintiff was 46 years of age as of the date of the Commissioner's final decision (Tr. 73). She has a twelfth-grade education and past work experience as a school bus driver (Tr. 82, 85, 92). She alleges disability as of August 2002, due to arthritis, hypertension and obesity (Tr. 72-75, 81).

Evidence relevant to the plaintiff's claim indicates that a whole body bone scan on August 29, 2002, revealed no evidence of lower extremity fracture (Tr. 113).

Records of Orthopedic Specialists of Charleston, South Carolina, including those of Dr. John M. Graham, Jr., between November 11, 2002, and April 23, 2003, revealed treatment with oral medication and medication injections for a three-month history of diffuse left leg and knee pain diagnosed as left knee osteoarthritis. During this period, examinations revealed that the plaintiff was obese and that she demonstrated left knee joint tenderness, left knee crepitus, reduced left knee flexion, and a left antalgic gait, but also that she demonstrated full left knee extension, the absence of left knee instability, the

absence of pain with passive internal/external left hip rotation, the ability to ambulate without an assistive device, and negative straight leg raise testing bilaterally. Left knee x-rays revealed degenerative changes. Lumbar spine x-rays revealed well-preserved disc spaces without abnormalities. The plaintiff denied back pain and reported that oral medications and medication injections were somewhat effective. On February 24, 2003, Dr. Graham indicated that the plaintiff could perform sedentary work but should "avoid climbing and prolonged standing and walking." Two months later it was noted that the plaintiff failed to attend a scheduled appointment with Dr. Graham, though apparently she was seen by his physicians assistant two days later (Tr. 130-32).

In a statement dated July 10, 2003, the plaintiff reported that she took no medication (Tr. 84).

On November 21, 2003, Dr. Fletcher K. Baker, a State agency physician, concluded that the plaintiff retained the physical residual functional capacity (RFC) to lift 10 pounds occasionally and 10 pounds frequently; stand and/or walk two hours and sit six hours in an eight-hour workday; climb ramps and stairs, balance, stoop, kneel, crouch and crawl occasionally; and perform work not requiring any lower extremity pushing and/or pulling or climbing of ladders, ropes, or scaffolds; and that she had no manipulative, visual, communicative, or environmental limitations (Tr. 123-126).

Records of Franklin Fetter Family Health Center, Inc., Charleston, South Carolina, between January 7, and November 3, 2004, revealed treatment with medication for hypertension, depression, shortness of breath, left leg edema and bilateral foot swelling apparently associated with possible congestive heart failure. The plaintiff was treated with oral medication, diet and exercise for noninsulin-dependent diabetes mellitus (NIDDM) and diet and exercise for obesity. She was assessed for complaints of bilateral knee pain, diagnosed as degenerative joint disease, and for back pain. During this period, examinations revealed regular cardiac rhythm and rate, clear lungs, mild extremity edema,

blood pressure readings ranging between 132/76 and 150/100, a height of 66 inches, and weights ranging between over 350 pounds to over 450 pounds. The plaintiff was counseled on diet and exercise, instructed to reduce food intake, and advised to discontinue smoking. She was also instructed in February 2004 to weigh herself prior to her next examination; in April 2004 to weigh herself; in July 2004 to get herself weighed; and in November 2004 to weigh herself prior to next examination. The plaintiff was referred for dietary education in January, July, September and November 2004. The plaintiff reported that she could not weigh herself. She also reported that her breathing had improved despite failing to obtain prescribed diuretic medication for it, and that diuretic medication was effective. It was noted that the plaintiff failed to obtain prescribed oral antidiabetic medication, failed to obtain prescribed diuretic medication, failed to take prescribed diuretic medication, and failed to know her weight or get herself weighed before or since her previous examination. It was also noted that she smoked cigarettes daily, and that she had discontinued monitoring her blood glucose levels "a while ago" (Tr. 134-135, 148-149, 151, 153-156).

On March 9, 2004, Dr. Baker concluded similarly that the plaintiff retained the physical RFC to lift 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk two hours and sit six hours in an eight-hour workday; climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; and perform work not requiring any lower extremity pushing and/or pulling or climbing of ladders, ropes, or scaffolds; and that she had no manipulative, visual, communicative, or environmental limitations (Tr. 141-144).

In an undated statement, the plaintiff reported that she took Accupril (an antihypertension medication) and furosemide (a diuretic medication) (Tr. 59).

At her hearing on December 28, 2004, the plaintiff testified that she had hypertension for which she took medication (Tr. 28, 31), "sugar" (Tr. 28), heart "problems" described as a fast heartbeat (Tr. 33-34), shortness of breath (Tr. 29), bilateral knee pain (Tr. 28, 30-31), foot swelling and pain (Tr. 28, 30-31, 34), hand swelling (Tr. 29), arthritis

(Tr. 28), back pain (Tr. 28-30, 34) and depression for which she took medication that was somewhat effective (Tr. 32-33). She also testified that she experienced long-term obesity, even when working for 14 years (Tr. 27, 29, 36). She rated her knee pain as typically a nine on a scale of one to 10, 10 being the worst, for which she took Tylenol and for which she had received medication injections that had been somewhat effective (Tr. 35, 38). She further testified that her physician had advised her that her knee disorders were affected by her obesity (Tr. 36). The plaintiff stated that she currently weighed 525 pounds (Tr. 29), that she ambulated with a cane (Tr. 35) and that she elevated her legs/feet daily (Tr. 29-31, 38). She also stated that she had difficulty standing long or walking even short distances (Tr. 29-30, 34) and that her feet swelled when she sat (Tr. 34). She further stated that she could not work because she could not stand or sit long (Tr. 34). She additionally stated that she attended church services occasionally (Tr. 32, 36) and possessed a driver's license, but did not "usually" drive an automobile (Tr. 36-37).

## ANALYSIS

The ALJ found that the plaintiff had the severe impairments of degenerative joint disease of the left knee and obesity. However, he further found that the plaintiff retained the residual functional capacity to perform a full range os sedentary work (Tr. 19). The plaintiff alleges that the decision is not based upon substantial evidence and that the ALJ erred by (1) incorrectly determining that the objective medical evidence failed to show that the plaintiff's impairments could produce the symptoms alleged; and (2) improperly relying solely on the Medical-Vocational Guidelines ("the Grids").

The plaintiff first argues that the ALJ failed to properly evaluate her credibility. The ALJ found as follows with regard to the plaintiff's obesity:

> The medical evidence shows that the claimant had a body mass index (BMI) of greater than 35, which represents

8

> "extreme" obesity. The evidence further reveals that the claimant had a height of 5'6" with a general weight in excess of 400 pounds. . . . Treatment notes reveal that the claimant was not able to move about and sustain consistent function. The undersigned finds that the claimant's obesity has had a negative effect upon the claimant's ability to perform routine movement beyond the residual functional capacity stated above and upon claimant's ability to sustain function over an eight-hour day.

(Tr. 16).

Later in the decision, the ALJ found, "The objective medical evidence, outlined above, shows the claimant's impairments would not be expected to produce the symptoms described by claimant with the resulting limitations in the claimant's capacity for basic work activities" (Tr. 18).

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear

to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

In this case, substantial evidence does not support the ALJ's finding at the first step of the two-step pain evaluation process that the plaintiff's severe impairments of obesity and degenerative joint disease of the left knee could not be expected to produce the symptoms she alleged. Accordingly, the case should be remanded to the ALJ for an assessment of the plaintiff's credibility in accordance with the above-cited law at the second step of the pain evaluation.

***Vocational Expert***

The plaintiff next argues that she suffers from both exertional and nonexertional impairments, and thus the ALJ should have obtained vocational expert testimony rather than relying solely on the Medical Vocational Guidelines ("the Grids") to satisfy the Commissioner's burden of identifying jobs in the national economy that the plaintiff can perform. *Heckler v. Campbell*, 461 U.S. 458 (1983); *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). When a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may serve as guidelines. *Wilson v. Heckler*, 743 F.2d 218, 222 (4th Cir. 1984). The Fourth Circuit has recognized that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Walker*, 889 F.2d at 49. The proper inquiry in such a case is "whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id.* If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the grids. The question of whether a nonexertional condition interferes with a claimant's residual functional capacity to perform certain jobs is a question of fact. *Smith v. Schweiker*, 719 F.2d 723 (4th Cir. 1984).

Here, the plaintiff contends that she had "severe" nonexertional impairments – specifically, obesity and pain – that would preclude the use of the Grids. Substantial evidence does not support the ALJ's conclusion that the plaintiff's obesity and pain would not affect her residual functional capacity to perform work of which she is exertionally capable. *See Wilson v. Barnhart*, 2004 WL 2958666, *2 (W.D. Va. 2004) ("Despite [the plaintiff's] obesity and despite the evidence that [the plaintiff] was suffering from at least some pain, the ALJ erroneously relied exclusively on the 'grids' when determining [the plaintiff's] exertional capacity."). Accordingly, upon remand, the ALJ should obtain vocational expert testimony.

11

**CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

November 22, 2006

Greenville, South Carolina